**United States District Court
Northern District of Texas**

| | |
|---|---|
| Margaret Budde, Lead Plaintiff pursuant to 7/29/15 Order, and Daniel Ream, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>Global Power Equipment Group, Inc., Raymond K. Guba, and Luis Manuel Ramirez,<br><br>    Defendants. | Case No. 3:15-cv-1679-M<br><br>**First Amended Class Action Complaint for Violations of the Federal Securities Laws**<br><br>*Jury Trial Demanded* |

### Introduction

1.     Global Power Equipment Group, Inc. ("Global Power" or the "Company") and its former-executive Defendants Raymond K. Guba and Luis Manuel Ramirez, oversaw years of weak internal controls, accounting irregularities, and fraudulent accounting practices at the Company. Quarter after quarter, Defendants provided investors and the SEC with false information about the Company's financial results, which artificially inflated Global Power's stock price.

2.     Since this accounting fraud was revealed to the market, Global Power has: (a) been delisted from the New York Stock Exchange; (b) fired its auditor; (c) seen both its CEO and CFO resign; and (d) at least four times falsely claimed that it was soon to publish its corrected and restated financial information, only to again delay their publication as the extent of accounting irregularities at the Company became more serious.

3.      Global Power has admitted that these accounting irregularities go to the very core of weak internal controls at the Company. Among other things, the Company has stated that its restatement revolves around material weaknesses in the Company's internal controls over financial reporting relating to revenue recognition, inventory costing, and warranty reserves, among other things. Revenue recognition, cost of inventory, and warranty reserves are issues that go to the very heart of the revenue and cost of revenue reported by Global Power, and ultimately to the bottom-line earnings the Company falsely announced each quarter during the Class Period.

4.      Furthermore, the Company has acknowledged that its prior auditor (whom the company fired), BDO, discussed with it issues regarding "supporting documentation for manual journal entries (including potential internal control implications)," and the need to "evaluat[e] the competency and objectivity of the internal audit function and its ability to effectively perform its duties."

5.      In layman's terms, the use of unsupported "manual journal entries" means that someone at Global Power was cooking the books, either right under the noses of the Company's internal auditors, or with their permission.

6.      The Company and BDO concluded that there would be a "need to perform a goodwill impairment review as a result of the anticipated restatement adjustments to the financial statements and a need to strengthen the Company's internal audit function."

7.      The company's failed internal audit division was ultimately overseen by Defendants Guba and Ramirez. Those Defendants falsely certified the sufficiency of the Company's internal controls and the accuracy of the Company's quarterly financial reporting quarter after quarter throughout the class period.

8.     This action seeks to hold Defendants liable for the over $150 million in market value wiped away from investors duped by Defendants' fraudulent accounting scheme once the scheme was fully disclosed to the market.

## Nature of the Action

9.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (as defined below) who purchased or otherwise acquired Global Power Equipment Group, Inc. ("Global Power" or the "Company") securities between May 1, 2012 and March 30, 2016, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of the federal securities laws (the "Class").

10.    Global Power is a comprehensive provider of custom engineered equipment and modification and maintenance services for customers in the energy, infrastructure, process, and industrial segments. Its customers are in and outside of the United States, in both developed and emerging economies.

## Jurisdiction and Venue

11.    The claims brought in this lawsuit arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder (15 C.F.R. § 240.10b-5).

12.    This Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and under 28 U.S.C. § 1331.

13.    Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and under 28 U.S.C. § 1391(b), as Global Power has its principal executive offices in this District and conducts substantial business here.

14.     In connection with the acts, omissions, conducts and other wrongs alleged in this Complaint, Defendants, either directly or indirectly, used the means and instrumentalities of interstate commerce, including (but not limited to) the United States mail, interstate telephone communications, internet communications, and the facilities of a national securities exchange.

**Parties**

15.     Plaintiff acquired Global power securities at artificially inflated prices during the Class Period and was damaged by the revelation of Global Power's fraudulent accounting practices.

16.     Defendant Global Power purports to be a "design, engineering, and manufacturing firm providing a broad array of equipment and services to the global power infrastructure, energy and process industries." Global Power is incorporated under the laws of Delaware, and has its principle executive offices at 400 East Las Colinas Boulevard, Suite 400, Irving, Texas, 75309. The Company's common shares traded on the New York Stock Exchange ("NYSE") under the trading symbol GLPW until March 31, 2016 when they were delisted from the exchange. They now trade on the over the counter market.

17.     Defendant Raymond K. Guba served as Global Power's Senior Vice President and Chief Financial Officer from November 2013 until he resigned on September 24, 2015.

18.     Defendant Luiz Michael Ramirez served as Global Power's President and Chief Executive Officer from July 1, 2012 until he resigned on March 20, 2015.

19.     The defendants referenced in ¶¶ 17-18 above are collectively referred to throughout the Complaint as the "Individual Defendants".

20.     Because of their positions within the Company, the Individual Defendants possessed the power and authority to control the content and form of Global Power's annual

reports, quarterly reports, press releases, and presentations to the SEC, securities analysts, money and portfolio managers, and investors, *i.e.*, the market. The Individual Defendants were provided with copies of the SEC filings alleged herein to be misleading prior to their issuance and had the ability to prevent their issuance or to cause them to be corrected.

## Substantive Allegations

21.    Global Power is a "design, engineering and manufacturing firm providing a broad array of equipment and services to the global power infrastructure, energy and process industries." Until it was delisted from the New York Stock Exchange on March 31, 2016, it traded under the ticker symbol "GLPW." It now trades on the over-the-counter market.

22.    In a series of announcements, beginning on May 6, 2015 and continuing until March 30, 2016, Global Power revealed that the quarterly and year-end financial accounting information it provided to the stock market and to the SEC was false and could no longer be relied upon.

23.    Global Power has yet to accurately restate its financial results for 2012, 2013 and 2014 (as it has repeatedly promised to do).[1] However, it has provided some clues about the massive extent of problems in its reports. According to Global Power, these problems include "material weaknesses in the Company's internal control over financial reporting relating to revenue recognition, inventory costing, and warranty reserves," as well as issues relating to "manual journal entries," "the recognition of revenue on projects that were completed at or

---

[1]    While the parties had originally negotiated a schedule that would allow Plaintiff to file her amended complaint after Global Power completed its restatement, "[i]n light of the protracted delay in this case," the Court ordered Plaintiff to file its complaint by March 1, 2017 (ECF No. 69.) Because Global Power's restatement (which the Company reports will come in the "next few weeks") will have an impact on Plaintiff's claims, Plaintiff anticipates moving the Court for leave to amend once the restatement is finally completed.

FIRST AMENDED                                                                                   5
CLASS ACTION COMPLAINT

after related warranty matters were identified," the "amounts of warranty accruals," and the recording of "expected losses on ongoing construction contracts," as well as the "timing of accrued severance benefits of certain employees."

**False Quarterly and Annual Reports Published by Global Power During the Class Period**

*First Quarter 2012 (Exs. A & B)*

24.    On May 1, 2012, the Company filed on form 10-Q with the SEC a quarterly earnings report for 1Q 2012. The filing is attached as Exhibit A and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit B and is incorporated by reference into this Complaint.

25.    Among other things, the Report claims that the Company earned $104,462,000 in total revenue at a cost of $87,970,000, for a gross profit of $16,492,000. The company reported net income of $825,000, or 5 cents per share.

26.    The Company admitted in a statement made on January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

*Second Quarter 2012 (Exs. C & D)*

1.    On August 9, 2012, the Company filed on form 10-Q with the SEC a quarterly earnings report for 2Q 2012. The filing is attached as Exhibit C and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit D and is incorporated by reference into this Complaint.

2.      Among other things, the report claims that the Company earned $94,678,000 in total revenue at a cost of $77,686,000, for a gross profit of $16,992. The company reported net income of $903,000, or 5 cents per share.

3.      The Company admitted in a statement made on January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

*Third Quarter 2012 (Exs. E & F)*

4.      On November 9, 2012, the Company filed on form 10-Q with the SEC a quarterly earnings report for 3Q 2012. The filing is attached as Exhibit E and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit F and is incorporated by reference into this Complaint.

5.      Among other things, the report claims that the Company earned $111,496,000 in total revenue at a cost of $93,367,000, for a gross profit of $18,129,000. The company reported net income of $1,546,000, or 9 cents per share.

6.      The Company admitted in a statement made on January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

*Fourth Quarter 2012 (Exs. G & H)*

7.      On March 7, 2013, the Company filed on form 10-K with the SEC an annual earnings report for 2012. The filing is attached as Exhibit G and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit H and is incorporated by reference into this Complaint.

8.      Among other things, the report claims that the Company earned $462,828,000 in total revenue in all of 2012 at a cost of $379,774,000, for a gross profit of $83,054,000. The company reported net income of $17,594,000, or $1.02 per share.

9.      The Company admitted in a statement made on January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

### First Quarter 2013 (Exs. I & J)

10.      On May 9, 2013, the Company filed on form 10-Q with the SEC a quarterly earnings report for 1Q 2013. The filing is attached as Exhibit I and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit J and is incorporated by reference into this Complaint.

11.      Among other things, the report claims that the Company earned $116,710,000 in total revenue at a cost of $100,744,000, for a gross profit of $15,966,000. The company reported net loss of $1,241,000, or a loss of 7 cents per share.

12.      The Company admitted in statements made on October 26, 2016 and January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

### Second Quarter 2013 (Exs. K & L)

13.      On August 3, 2013, the Company filed on form 10-Q with the SEC a quarterly earnings report for 2Q 2013. The filing is attached as Exhibit K and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit L and is incorporated by reference into this Complaint.

14.     Among other things, the report claims that the Company earned $115,965,000 in total revenue at a cost of $97,162,000, for a gross profit of $18,803,000. The company reported net income of $741,000, or 4 cents per share.

15.     The Company admitted in statements made on October 26, 2016 and January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

*Third Quarter 2013 (Exs. M & N)*

16.     On November 7, 2013, the Company filed on form 10-Q with the SEC a quarterly earnings report for 3Q 2013. The filing is attached as Exhibit M and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit N and is incorporated by reference into this Complaint.

17.     Among other things, the report claims that the Company earned $109,998,000 in total revenue at a cost of $89,272,000, for a gross profit of $20,726,000. The company reported net income of $1,302,000, or 8 cents per share.

18.     The Company admitted in statements made on October 26, 2016 and January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

*Fourth Quarter 2013 (Exs. O & P)*

19.     On March 17, 2014, the Company filed on form 10-K with the SEC an annual earnings report for 2013. The filing is attached as Exhibit O and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit P and is incorporated by reference into this Complaint.

First Amended                                                    9
Class Action Complaint

20.     Among other things, the report claims that the Company earned $484,218 in total revenue for the year of 2013 at a cost of $399,214,000, for a gross profit of $85,004,000. The company reported net income of $11,785,000, or 70 cents per share.

21.     The Company admitted in statements made on October 26, 2016 and January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

*First Quarter 2014 (Exs. Q & R)*

22.     On May 2, 2014, the Company filed on form 10-Q with the SEC a quarterly earnings report for 1Q 2014. The filing is attached as Exhibit Q and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit R and is incorporated by reference into this Complaint.

23.     Among other things, the report claims that the Company earned $104,882,000 in total revenue at a cost of $86,404,000, for a gross profit of $18,478,000. The company reported a net loss of $79,000, or 0 cents per share.

24.     The Company admitted in statements made on October 26, 2016 and January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

*Second Quarter 2014 (Exs. S & T)*

25.     On June 29, 2014, the Company filed on form 10-Q with the SEC a quarterly earnings report for 2Q 2014. The filing is attached as Exhibit S and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit T and is incorporated by reference into this Complaint.

26.    Among other things, the report claims that the Company earned $114,739,000 in total revenue at a cost of $94,477,000, for a gross profit of $20,262,000. The company reported net income of $774,000, or 5 cents per share.

27.    The Company admitted in statements made on October 26, 2016 and January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

***Third Quarter 2014 (Exs. U & V)***

28.    On October 30, 2014, the Company filed on form 10-Q with the SEC a quarterly earnings report for 3Q 2014. The filing is attached as Exhibit U and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit V and is incorporated by reference into this Complaint.

29.    Among other things, the report claims that the Company earned $145,128,000 in total revenue at a cost of $120,447,000, for a gross profit of $24,681,000. The company reported net income of $4,524,000, or 26 cents per share.

30.    The Company admitted in statements made on October 26, 2016 and January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

***Fourth Quarter 2014 (Exs. W & X)***

31.    On March 9, 2015, the Company filed on form 10-K with the SEC an annual earnings report for 2014. The filing is attached as Exhibit W and is incorporated by reference into this Complaint. The Company also issued a press release on the same day discussing its earnings. That release is attached as Exhibit X and is incorporated by reference into this Complaint.

32.     Among other things, the report claims that the Company earned $538,545,000 in total revenue for all of 2014 at a cost of $447,715,000, for a gross profit of $90,830,000. The company reported net income of $11,149,000, or 65 cents per share.

33.     The Company admitted in statements made on May 6, 2015, October 26, 2016, and January 26, 2016 and discussed below, that these numbers, among others provided on this day, were false.

*Sarbanes-Oxley Certifications*

34.     Each of the above-referenced 10-Q and 10-Ks filed with the SEC contained certain certifications made pursuant to the Sarbanes-Oxley Act of 2002.

35.     Among other things, the certifications require the signer to attest that they have reviewed the report, that it does not contain untrue statements, that it fairly represents the financial condition of the company, that the company's internal controls are effective:

> 2.  Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3.  Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;
>
> 4.  The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rule 13a-15(f) and 15d-15(f)) for the registrant and we have:
>
> > a.     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us

by others within those entities, particularly during the period in which this report is being prepared;

b.      Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c.      Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d.      Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5.   The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a.      All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b.      Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

36.    Defendant Ramirez signed certifications as described above for each of the

Company's 10-Q's for 2Q 2012, 3Q 2012, 1Q 2013, 2Q 2013, 3Q 2013, 1Q 2014, 2Q 2014, and 3Q

2014, as well as for the Company's 10-Ks for 2012, 2013, and 2014.

37.     Defendant Guba signed certifications as described above for each of the
Company's 10-Q's for 1Q 2014, 2Q 2014, and 3Q 2014, as well as for the Company's 10-K's for
2013 and 2014.

38.     Each of these certifications were false, as shown by the Company's statements on
May 6, 2015, October 26, 2015, and January 26, 2016 (described below) which explained that the
Company's financial results could not be relied upon, as well as by the Company's March 30,
2016 statement (also described in detail below), which explained that the Company and its
auditors had found "material weaknesses in the Company's internal control over financial
reporting," including "potential internal control implications" of "supporting documentation
for manual journal entries."

**Global Power's Restatement Slowly Expands,**
**Gradually Allowing the Market to Understand the Full Extent of its Misrepresentations**

39.     On March 20, 2015, Defendant Ramirez resigned as President and Chief
Executive Officer of Global Power without explanation. The resignation was reported by the
Company in a March 23, 2015 press release.

40.     Several weeks later, on May 6, 2015, Global Power filed on form 8-K with the SEC
a notice that stated that its 2014 earnings needed to be restated:

> On May 5, 2015, the Audit Committee of the Board of Directors (the "Audit
> Committee") of Global Power Equipment Group Inc. ("Global Power" or
> the "Company"), in consultation with its outside advisors and
> management, concluded that the financial statements for the annual period
> ended December 31, 2014 should not be relied upon because of accounting
> errors affecting the fourth quarter of 2014 that were discovered during the
> first quarter 2015 financial review process. **Those errors resulted in an**
> **understatement of the Company's cost of sales in the quarterly and**
> **annual periods ended December 31, 2014.**
>
> Pending the issuance by the Company's independent registered public
> accounting firm, BDO USA, LLP ("BDO"), of its audit opinion in respect

of the Company's restated 2014 financial statements, the previously filed financial statements of Global Power for that period, **including the corresponding financial statement information, management's report on the effectiveness of the Company's internal control over financial reporting as of December 31, 2014, earnings and press releases or other shareholder communications, as well as the auditors' reports on those financial statements and its report on the effectiveness of the Company's internal control over financial reporting as of December 31, 2014, should not be relied upon**. The Company intends to file restated financial information as soon as practicable.

41.     Defendant Guba unceremoniously resigned as Global Power's CFO on September 24, 2015 without explanation. The Company noted his resignation without comment in a September 25, 2015 press release.

42.     Several weeks later, on October 26, 2015, the Company filed on Form 8-K with the SEC a notice indicating that in addition to its 2014 results, its 2013 results also could not be relied upon:

> As previously disclosed in a Current Report on Form 8-K, filed with the Securities and Exchange Commission on May 6, 2015 (the "May Form 8-K"), the Audit Committee of the Board of Directors (the "Audit Committee") of Global Power Equipment Group Inc. (the "Company"), in consultation with its outside advisors and management, concluded that the Company's financial statements for the annual period ended December 31, 2014 should not be relied upon. The May Form 8-K further disclosed that the Company and its outside advisors would review the effect of the accounting errors on the Company's previously reported financial statements included in its Form 10-K for the year ended December 31, 2014 and also determine whether other periods may have been impacted. **The Company has discovered certain additional accounting errors affecting each of its 2014 fiscal quarters, as well as errors affecting the Company's financial statements for the annual period ended December 31, 2013 and each of the quarterly periods contained therein.**
>
> On October 21, 2015, the Audit Committee, in consultation with its outside advisors and management, **concluded that the financial statements for the annual period ended December 31, 2013 and for all quarterly periods contained in the Company's 2013 and 2014 fiscal years should not be relied upon**. More specifically, the Company's previously filed financial statements for its 2013 and 2014 fiscal years and the interim periods

contained therein, including **(i) all corresponding financial statement information, management's reports on the effectiveness of the Company's internal control over financial reporting as of December 31, 2013 and 2014, (ii) all related earnings releases, press releases and other shareholder communications, (iii) the auditor's reports on the Company's 2013 and 2014 financial statements, and (iv) the auditor's reports on the effectiveness of the Company's internal control over financial reporting as of December 31, 2013 and 2014, should not be relied upon**.

(emphasis added).

43.     Thus, as of October 26, 2015, the Company's restatement had escalated from an issue about the fourth quarter of 2014 to an issue affecting all of 2013 and 2014.

44.     On January 26, 2016, the Company filed on Form 8-K with the SEC a notice that its 2012 results also could not be relied upon, and stated that its 2011 and 2012 results were also likely incorrect:

> As previously disclosed in Current Reports on Form 8-K, filed with the Securities and Exchange Commission on May 6, 2015 (the "May Form 8-K") and October 26, 2015 (the "October Form 8-K" and, together with the May Form 8-K, the "Prior Form 8-Ks"), the Audit Committee of the Board of Directors (the "Audit Committee") of Global Power Equipment Group Inc. (the "Company"), in consultation with its outside advisors and management, concluded that the Company's financial statements for the annual periods ended December 31, 2014 and December 31, 2013 should not be relied upon. The Prior Form 8-Ks further disclosed that the Company and its outside advisors would review the effect of the relevant accounting errors on the Company's previously reported financial statements included in its Form 10-Ks for the years ended December 31, 2014 and 2013, and also determine whether other periods may have been impacted. **The Company has discovered similar accounting errors affecting the Company's financial statements for the year ended December 31, 2012.** The Company previously disclosed that it has certain material weaknesses in its internal control over financial reporting relating primarily to **revenue recognition, work in progress, and warranty reserves**. The errors identified in the Company's 2012 financial statements relate to **revenue recognition, cost of sales and warranty reserves**.
>
> On January 21, 2016, the Audit Committee, in consultation with its outside advisors and management, concluded that the financial statements for the

annual period ended December 31, 2012 and for all quarterly periods contained therein should not be relied upon. More specifically, the Company's previously filed financial statements for 2012, including **(i) all corresponding financial statement information, management's reports on the effectiveness of the Company's internal control over financial reporting as of December 31, 2012, (ii) all related earnings releases, press releases and other shareholder communications, (iii) the auditor's reports on the Company's financial statements for 2012, and (iv) the auditor's reports on the effectiveness of the Company's internal control over financial reporting as of December 31, 2012, should not be relied upon.**

The Company intends to present its restated consolidated financial statements and related consolidated financial information on an annual and quarterly basis in an amendment to its 2014 annual report on Form 10-K (the "Amended Form 10-K"). **It is currently anticipated that the selected financial data contained in Item 6 of the Amended Form 10-K will contain unaudited financial data for 2011 and 2010 that would be revised to address the same types of errors identified in the Company's 2012 financial statements.** The Company has not yet determined the revisions to be made to the unaudited financial data for 2011 and 2010.

(emphasis added).

45.     So, eight months after its initial announcement that it had detected an issue in the fourth quarter of 2014, the accounting issues at Global Power were determined to affect earnings for every quarter dating all the way back to 2010.

46.     As the Company made clear, the information it provided in its quarterly earnings announcements were incorrect as to revenue recognition and warranty reserves for all of 2012, 2013 and 2014. Furthermore, "work in progress" was incorrectly stated in 2013 and 2014, and "cost of sales" was incorrectly stated in 2012.

47.     Each of these line items affects the bottom line earnings information provided by Global Power. Because they were incorrect, Global Power's overall earnings were also misstated.

First Amended
Class Action Complaint

17

**Global Power Fires Its Auditor, and Reveals
The Truth About Its Need to Restate Earnings**

48.     On March 30, 2016, Global Power announced that it had fired its auditor, BDO:

> [T]he Company's management recommended to the Company's board of
> directors (the "Board") and the Audit Committee of the Board (the "Audit
> Committee") that the Company dismiss BDO as its independent registered
> public accounting firm with respect to the audit of the Company's financial
> statements for its 2012 through 2014 fiscal years, effective March 24, 2016,
> and appoint Hein as its new independent registered public accounting firm
> for all relevant periods. The full Board and the Audit Committee each
> approved that change. The Company's Board, Audit Committee, and
> management believe that this approach will be in the best interest of the
> Company and its shareholders, and will be the most effective way to
> complete the audit of the Company's 2015 financial statements, as well as
> those subject to the ongoing restatement.

49.     Thus, almost a year after Global Power first acknowledged it had a problem, it

decided to fire BDO and to start all over again with a new auditor, Hein & Associates LLP

("Hein").

50.     That same day, the Company also announced that it would "not become current

in its SEC-reporting obligations by March 31, 2016," because its new audit firm was "only

recently . . . engaged," and therefore the Company's stock would be delisted from the NYSE and

traded on the over-the-counter market on March 31, 2016.

51.     Thus, Global Power decided that rather than allowing BDO to complete its

restatement by March 31, 2016, which would have saved its listing on the NYSE as previously

anticipated by the Company, it would instead fire BDO and accept the punishment of delisting.

52.     The March 30 announcement also provided, for the first time, details about what

was behind Global Power's need to restate its earnings for at least three years:

> [P]rior to the Company's dismissal of BDO, the Company and BDO
> discussed certain **material weaknesses in the Company's internal
> control over financial reporting relating to revenue recognition,**

**inventory costing, and warranty reserves**. The Company is in the process of remediating those material weaknesses. Other issues discussed between the Company and BDO included those relating to the **supporting documentation for manual journal entries (including potential internal control implications), a proposed change in accounting methodology for certain construction contracts from the "completed contract" method to the "percentage-of- completion" method, the recognition of revenue on projects that were completed at or after related warranty matters were identified, amounts of warranty accruals and the potential accounting impact of warranties that meet the definition of "extended warranties," recording of expected losses on ongoing construction contracts, and the timing of accrued severance benefits to certain employees**. In addition, the Company and BDO concluded there is a need to perform a goodwill impairment review as a result of the anticipated restatement adjustments to the financial statements and a **need to strengthen the Company's internal audit function**. With respect to the internal audit function, the Company and BDO discussed **evaluating the competency and objectivity of the internal audit function and its ability to effectively perform its duties** (such examination of the internal audit function, collectively with the matters described in the first, third, and fourth sentences of this paragraph, are referred to herein as the "Matters").

(emphasis added).

53.     Global Power has thus admitted that its former auditor, BDO raised with the company the need to "evaluat[e] the competency and objectivity of [Global Power's] internal audit function and its ability to effectively perform its duties."

54.     Global Power also admitted that BDO raised concerns about "supporting documentation for manual journal entries (including potential internal control implications)." This strongly suggests that Global Power employees were manually adjusting critical accounting entries and the Company's internal auditors were either complicit in this behavior or too incompetent to detect the manual adjustments.

55.     In other words, Global Power's books were being cooked—right under the internal auditors' noses.

**Global Power Repeatedly Promises, But Fails to Deliver, Its Restatement**

56.     The sheer complexity and extent of Global Power's accounting irregularities can be inferred by the Company's repeated attempts to set a date for it to publish its restated earnings, only to cancel that date and push the deadline off each time.

57.     On July 8, 2016, the Company issued a press release entitled "Global Power Provides Planned Timing for Filing of Financial Statements for 2016, 2015 and Restated Prior Years," and said that it "anticipate[d] filing financial statements for . . . restated prior years on or about September 30, 2016."

58.     On September 28, 2016, the Company issued a press release walking back its July 8, 2016 press release and stating that it "expects to become current with its [SEC] reporting obligations no later than December 31, 2016," and that it "intends to provide a further update on the anticipated timing of these filings no later than October 31, 2016."

59.     On October 31, 2016, the Company issued a press release entitled "Global Power Confirms Expected Timing for Filing Financial Statements," in which it committed to "become current with its [SEC] reporting obligations no later than December 31, 2016."

60.     On December 12, 2016, the Company issued a press release entitled "Global Power Provides Update on Restatement Process," where it said it "no longer expects that it will become current . . . by December 31, 2016, as previously announced," and that it "expects to provide specifics on its filing schedule by mid-January 2017."

61.     This December 12, 2016 update acknowledged the extent and complexity of the errors in the prior results:

> Global Power has used its best efforts to successfully complete the restatement process within the previously announced timeframes. While the Company has made substantial progress, it has not

yet completed this process **as a result of the complexities associated with this restatement. These complexities include converting the method of revenue recognition for one of the businesses within the Company's Products segment from completed contract to percentage-of-completion accounting as well as the related requirement to recalculate revenue, costs of goods sold, and work-in-process for each of the four years subject to restatement.** With this in mind, Global Power has recently retained additional outside advisors to support the completion of the restatement process as soon as possible.

(emphasis added.)

62.     On January 17, 2017, the Company stated that it "expects to report its 2015 financial results and audited and restated 2013 and 2014 financials in February 2017."

63.     On February 24, 2017, the Company announced that it would no longer meet its February 2017 goal, and would instead commit to filing its 2015 financial results in "the next few weeks," but made no specific promise about when it would provide restated financial results for the prior years.

## Class Action Allegations

64.     Plaintiff brings this case as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class of all persons and entities who purchased or otherwise acquired Global Power securities between May 1, 2012 and March 30, 2016, inclusive. Excluded from the Class are Defendants, directors and officers of Global Power, as well as their families and affiliates.

65.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

66.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to members of the Class which predominate over questions which may affect individual Class Members include:

a.   Whether the Exchange Act was violated by Defendants;

b.   Whether Defendants omitted and/or misrepresented material facts;

c.   Whether Defendants' statements omitted material facts necessary in order to make the statements made; in light of the circumstances under which they were made, not misleading;

d.   Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e.   Whether the price of Global Power ordinary shares were thereby artificially inflated; and

f.   The extent of damage sustained by Class members and the appropriate measure of damages.

67.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged in this Complaint.

68.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

69.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**Fraud on the Market**

70.     Plaintiff intends to rely upon the presumption of reliance established by the fraud-on-the-market doctrine. Among other things:

   a.   Defendants made public misrepresentations and failed to disclose material facts during the Class Period;

   b.   The omissions and misrepresentations were material;

   c.   The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

   d.   Plaintiff and other members of the Class purchased Global Power common stock between the time Defendants made their misrepresentations and failed to disclose material facts and the time the true facts were disclosed, all without knowledge of the misrepresented and omitted facts.

71.     At all relevant times, the market for Global Power securities was efficient, as (i) Global Power filed periodic public reports with the SEC; and (ii) Global Power regularly communicated with public investors via established market communication mechanisms (*e.g.*, press releases, earnings calls, analyst presentations, etc.).

72.     Plaintiff and the Class relied on the price of Global Power common stock, which reflected all the information in the market, including the misstatements and omissions of Defendants.

**No Safe Harbor**

73.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to the allegedly false statements pleaded in this Complaint. The

specific statements pleaded herein, including statements about Global Power's earnings, were not forward-looking when made.

74.     To the extent that any of the statements are deemed to be forward-looking, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**Loss Causation**

75.     The chart below reflects Global Power's closing stock price throughout the Class Period:



76.     As made clear by the chart, Global Power investors suffered significant losses with each corrective disclosure about Global Power's accounting irregularities made during the Class Period.

77.     When Global Power made its May 6, 2016 announcement that its 4Q 2014 and year-end 2014 earnings could not be relied upon, Global Power stock dropped from a closing price of $12.24 on May 6, 2016 to $8.19 on May 7, 2016. In the days that followed, Global Power's stock price fell to $7.47 per share, an almost 39% loss in value attributable directly to the Company's first acknowledgement of accounting irregularities.

78.     When Global Power made its October 26, 2015 announcement that it would need to restate earnings for all of 2013 and 2014, its stock had fallen to $4.40, a loss of 64% from its unaffected price.

79.     When Global Power made its January 26, 2016 announcement that it would need to restate earnings for all of 2012, in addition to 2013 and 2014, its stock had fallen to $2.62 per share, a loss of 79% from its unaffected price.

80.     And in the days that followed Global Power's March 30, 2016 announcement that it had fired its auditor, acknowledgement of the serious accounting and internal control problems existing at the company, and its delisting on the NYSE, the stock traded as low as $1.62 per share, a loss of 87% from its unaffected price.

81.     Each of these drops is directly attributable to Global Power's acknowledged accounting irregularities.

## Count I
## Violations of Section 10(b) of the Exchange Act, and Rule 10b-5
## (against all Defendants)

82.     Plaintiff re-alleges each allegation contained above as if fully set forth herein.

83.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary to make the statements made, considering the circumstances under which they were made, not misleading.

84.     Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Global Power's common stock during the Class Period.

85.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Global Power common stock.  Plaintiff and the Class would not have purchased Global Power common stock at the price paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## Count II
### Violations of Section 20(a) of the Exchange Act
### (against the Individual Defendants)

86.     Plaintiff re-alleges each allegation contained above as if fully set forth herein.

87.     The Individual Defendants acted as controlling persons of Global Power within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent Global Power from engaging in the wrongful conduct complained of herein.  The Individual Defendants were provided with or had unlimited access to the fraudulent SEC filings and other reports alleged by Plaintiff to be misleading both prior to and immediately after their

publication, and had the ability to prevent the issuance of these materials or cause them to be corrected so as not to be misleading.

### Prayer for Relief

Plaintiff demands judgment against Defendants as follows:

a.  A determination that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and the certification of the Plaintiff as Class Representative;

b.  Damages sustained by Plaintiff and the Class due to the acts and transactions alleged herein;

c.  Prejudgment and post-judgment interest, as well as reasonable attorneys' fees, expert fees, and other costs; and

d.  Any other relief that this Court deems just and proper.

### Demand for Jury Trial

Plaintiff hereby demands a trial by jury.

March 1, 2017                                  Respectfully submitted,

**Kendall Law Group, PLLC**

/s/ Joe Kendall
Joe Kendall, State Bar No. 11260700
Jamie J. Mckey, State Bar No. 24045262
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
(214) 744-3000 phone
(214) 744-3015 fax
jkendall@kendalllawgroup.com
jmckkey@kendalllawgroup.com

*Liaison Counsel for Lead Plaintiff*

**Block & Leviton LLP**
Jeffrey C. Block, *pro hac vice*
Jacob A. Walker, *pro hac vice*
155 Federal Street, Suite 400
Boston, Massachusetts 02110
(617) 398-5600  phone
(617) 507-6020  fax
jeff@blockesq.com
jake@blockesq.com

*Lead Counsel for Lead Plaintiff*


CERTIFICATE OF SERVICE

I certify that a copy of this document was forwarded to all counsel of record in this case via the Court's ECF system as of the date file stamped thereon.

/s/ Joe Kendall
Joe Kendall