IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARGARET BUDDE, Lead Plaintiff, and DANIEL REAM, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, v. | § § § § | Civil Action No. 3:15-cv-1679-M |
| GLOBAL POWER EQUIPMENT GROUP, INC.; RAYMOND K. GUBA; LUIS MANUEL RAMIREZ; and DAVID L. WILLIS, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss the Second Amended Class Action Complaint. (ECF No. 81). For the reasons stated below, the Motion is **GRANTED**.

I. **Factual and Procedural Background**

Defendant Global Power Equipment Group, Inc. ("Global Power") is a public corporation that provides equipment and services to the energy industry. (2d. Am. Compl. ¶ 3, ECF No. 76). In 2015, Global Power announced that some of its prior financial reports were inaccurate. (*Id.* ¶¶ 53, 55, 61, 67). On May 15, 2017, Global Power issued a restatement that corrected several reports and identified causes for the errors. (*Id.* ¶ 77). Most relevant here, Global Power acknowledged that it prematurely recognized revenues in its Electrical Solutions ("ES") segment, had deficiencies in internal control over financial reporting, and incorrectly accounted for goodwill upon the sale of a subsidiary company, Deltak. (*Id.* at Ex. Y).

Margaret Budde and Daniel Ream, on behalf of all persons who acquired Global Power stock between September 7, 2011, and May 6, 2015, filed a class action lawsuit against Global

1

Power and some of its former officers—Raymond K. Guba, Luis Manuel Ramirez, and David L. Willis. Guba was Global Power's Senior Vice President and CFO from November 2013 to September 2015. (2d. Am. Compl. ¶ 31). Ramirez was the President and CEO from July 2012 to March 2015. (*Id.* ¶ 29). Willis was the CFO from January 2008 to November 2013. (*Id.* ¶ 34). Plaintiffs assert that Defendants issued false and misleading financial reports[1] in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a). Defendants move to dismiss for failure to state a claim.

## II. Legal Standard

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Twombly,* 550 U.S. at 570. The Court must accept all of the plaintiff's factual allegations as true, but it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Id.* at 555. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief. *Iqbal*, 556 U.S. at 678.

To state a claim under Section 10(b), Plaintiffs must plead: (1) a material

---

[1] Plaintiffs list the following financial reports for which they claim Guba is responsible: Forms 10-K for 2013 and 2014; Forms 10-Q for 2014; and corresponding Sarbanes-Oxley ("SOX") certifications accompanying each of these reports. (2d. Am. Compl. ¶ 31). Plaintiffs list the following reports for Ramirez: Forms 10-K for 2012, 2013, and 2014; Forms 10-Q for 2013 and 2014; and corresponding SOX certifications. (*Id.* ¶ 29). Plaintiffs list the following reports for Willis: Forms 10-K for 2011 and 2012; Form 8-K issued on September 7, 2011; and corresponding SOX certifications. (*Id.* ¶ 34).

misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005) (citing 15 U.S.C. 78j(b)). To adequately plead scienter, Plaintiffs must meet the heightened standard required under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2). The PSLRA instructs Plaintiffs to "state with particularity facts giving rise to a strong inference" that each Defendant acted with scienter, i.e., with "intent to deceive, manipulate, or defraud or [with] severe recklessness." *Id.*; *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (citation omitted). Severe recklessness is limited to those "highly unreasonable . . . misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standard of ordinary care." *Jastrow*, 789 F.3d at 535 (citation omitted). Scienter must exist at the time the misrepresentation occurred. *See Magruder v. Halliburton Co.*, 2009 WL 854656, at *8 (N.D. Tex. Mar. 31, 2009).

To qualify as "strong," the inference of scienter must be "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). This requires the Court to "engage in a comparative evaluation," weighing "not only inferences urged by [Plaintiffs] . . . but also competing inferences rationally drawn from the facts alleged." *Id.* Conclusory allegations are not sufficient. *See Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 538-39 (5th Cir. 2008) ("[G]eneral allegations and conclusory statements, such as stating [defendants] knew . . . adverse material" cannot support a strong inference of scienter.). Overall, the Court must "assess all the allegations holistically," not each in isolation. *Tellabs,* 551 U.S. at 326.

Some of Plaintiffs' allegations are from confidential sources. The Court must discount

3

allegations from confidential sources. *See Shaw Grp.*, 537 F.3d at 535 ("[J]udges [must] weigh the strength of plaintiffs' favored inference in comparison to other possible inferences; anonymity frustrates that process.") (citation omitted). Confidential sources must also be described "with sufficient particularity to support the probability that a person in the position occupied by the source . . . would possess the information pleaded."[2] *Id.* (citation omitted).

## III. Analysis of Plaintiffs' Section 10(b) Claim

Defendants argue that Plaintiffs have failed to adequately plead scienter and loss causation. The Court addresses each in turn.

### a. Scienter

As a corporation, Global Power is deemed to have scienter if the officer that made the misrepresentation has scienter. *See Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004). The Court accordingly analyzes the sufficiency of allegations against each of the officer Defendants—Guba, Ramirez, and Willis—who made the misrepresentations at issue.

#### i. Raymond K. Guba and Luis Manuel Ramirez

The mere publication of inaccurate accounting figures, without more, does not establish scienter. *See Shaw Grp.*, 537 F.3d at 534 (citation omitted). Plaintiffs must show that Defendants knew that they were publishing materially false information or were severely reckless in publishing such information.[3] *See Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 432

---

[2] The Court notes that Plaintiffs provide sufficient details about each confidential witness ("CW")—including title, dates of employment, and basis of knowledge—to meet this standard. (*See* 2d. Am. Compl. ¶¶ 37-46); *see also Carlton v. Cannon*, 184 F. Supp. 3d 428, 460 (S.D. Tex. 2016) ("[A] complaint should give details like (1) the person's job description, (2) individual responsibilities, (3) specific employment dates, and (4) where and when the confidential source came to know the information supporting an inference of scienter, such as when a relevant comment was made to the confidential source.").

[3] Similarly, Sarbanes-Oxley ("SOX") certifications associated with such publications can only support a strong inference of scienter if "the person signing the certification had reason to know, or should have suspected, due to the

(5th Cir. 2002). In particular, Plaintiffs must allege what facts each Defendant knew—such as specific accounting or internal control problem—in addition to when and how they learned these facts to support a strong inference of scienter. *See Magruder*, 2009 WL 854656, at *9, *14 n.121. Plaintiffs allege that Guba and Ramirez knew or recklessly disregarded concerns about (1) the ES segment inaccurately reporting revenues and costs and (2) deficiencies in internal control over financial reporting.[4] (2d. Am. Compl. ¶ 21).

In early 2014, Penny Sherrod-Campanizzi[5] ("Campanizzi"), the President of the ES segment, learned that Global Power's 2013 financial reports were inaccurate because the ES segment prematurely recognized revenues from certain contracts. (2d. Am. Compl. ¶ 92-94). She directed the controller of the ES Segment, Peggy Gaskill, to meet with Guba and review the errors. (*Id.* ¶¶ 9, 95). Gaskill met with both Guba and Ramirez to discuss the errors in April 2014. (*Id.* ¶ 95, 98). On July 2014, Campanizzi directly informed Guba and Ramirez on a conference call that the ES segment adjusted its 2014 financial figures to account for the errors. (*Id.* ¶¶ 8, 100, 102; *see also id.* ¶¶ 107-08). After the conference call, Guba and Ramirez set up a process to manually confirm the ES segment's financial results for the third quarter of 2014. (*Id.* ¶¶ 104-05). In October 2014, Guba and Ramirez also learned that workers at an ES segment factory in Chattanooga were not properly recording their hours, leading to cost overruns.[6] (*Id.* ¶¶

---

presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements and omissions." *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555 (5th Cir. 2007) (citation omitted).

[4] These allegations do not constitute group pleading because they are sufficiently particularized. *See Jastrow*, 789 F.3d at 538. However, because these allegations apply to both Guba and Ramirez, they are most easily discussed together.

[5] Campanizzi is presented as CW 7 in the Second Amended Complaint. However, Defendants have identified CW 7 as Campanizzi, and her identity was confirmed by Plaintiffs. (*See* Def. Br. at 8, ECF No. 82; Pl. Resp. at 2, ECF No. 96). The Court accordingly takes judicial notice that CW 7 is Campanizzi. *See Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 957 (5th Cir. 2016).

[6] CW 10 states that "Global Power management was aware" of these issues as early as "mid-2014." (2d. Am.

110-11, 143-44, 146). This led to the discovery of a $3 million deficit for the ES segment in December 2014. (*Id.* ¶¶ 143-44). The deficit was then accounted for and disclosed in Global Power's Form 10-K for 2014. (Def. App. at 24, ECF No. 83).

More generally during his tenure at Global Power, Guba did not address concerns raised about internal controls over financial reporting. (2d. Am. Compl. ¶¶ 134, 137 (CW 1 stating that Guba did not address concerns raised "during five or six staff meetings beginning in November or December 2013 and through October 2014"); *see also id.* ¶ 148). Ramirez allegedly cut the accounting department's training budget to $0 and oversaw the departure of numerous accountants "within a six-month period beginning in August 2013." (*Id.* ¶¶ 139-40).

Taken together, these allegations do not support the contention that Guba or Ramirez knew that financial reports, at the time they were published, were false or that they were severely reckless as to their falsity. Guba and Ramirez learned in April 2014 that prior financial reports were inaccurate because the ES segment prematurely recognized revenues. The allegations do not suggest that Guba or Ramirez knew or had reason to know then that the same problem affected financial reports in 2014.[7] Moreover, Campanizzi told both of them in July 2014 that revenues from the ES segment would be adjusted because of the faulty 2013 figures. Guba and Ramirez also implemented a process to manually confirm the ES segment's accounting to make sure that the numbers were being accurately reported. Similarly, once they learned of the inaccurate cost reporting in the ES segment's Chattanooga factory, the next financial report was accordingly adjusted. *Cf. Jastrow*, 789 F.3d at 540 (Where "red flags [are] disclosed to the

---

Compl. ¶ 146). Such allegations are too vague to be credited; CW 10 does not specify who from management was aware of the issues and when he or she learned about the issues. Likewise, a plant manager states that he "repeatedly informed both Ramirez and Guba" about the issues, but again does not provide details on when they were informed. (*Id.* ¶ 111).

[7] CW 10 states that "the accounting problems continued into 2014," but does not directly state that these problems were relayed to Guba or Ramirez or that they should have known about them. (2d. Am. Compl. ¶ 96)

6

public," the disclosure "negates the inference that defendants acted with scienter.").

Although multiple concerns about internal control were raised with Guba, Plaintiffs are not clear as to what those concerns were and when they were raised. (2d. Am. Compl. ¶¶ 134, 137). Without more, the Court is unable to determine that ignoring such concerns constitute recklessness. This could be just "negligence, oversight or simple mismanagement, none of which rise to the standard necessary to support a securities fraud action." *See Abrams*, 292 F.3d at 433. Guba also once told the Director of Internal Audit that "[a certain division is] in the midst of going through some stuff, so don't focus on this area." (2d. Am. Compl. ¶ 152). A confidential witness understood this to mean "there were problems with . . . [a certain division's] accounting and so internal audit should ignore it." (*Id.*) Guba's statement and the confidential witness's interpretation of it does not weigh into the Court's analysis of scienter. The statement itself is ambiguous as to its meaning, and is subject to multiple interpretations. *See Shaw Grp.*, 537 F.3d at 538 (Allegation cannot contribute to a strong inference of scienter because it is "susceptible to many interpretations, including innocent ones."). More importantly, case law standardly finds that opinions of confidential witnesses add nothing to scienter analysis.[8] *See In re Key Energy Servs., Inc. Sec. Litig.*, 166 F. Supp. 3d 822, 862 (S.D. Tex. 2016) (citing cases).

Allegations against Ramirez are similarly ambiguous. Even if Ramirez cut the accounting department's budget and numerous accountants left during his tenure, Plaintiffs also allege that consultants from outside staffing agencies correspondingly began to handle almost all internal accounting-related work. (*See* 2d. Am. Compl. ¶ 151). Ramirez may have been simply outsourcing the work instead of ignoring financial reporting.

---

[8] The fact that a confidential witness reports hearsay "does not automatically disqualify his statement from consideration in the scienter calculus." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 n.4 (9th Cir. 2009). This is because "the rigorous standards for pleading securities fraud do not require a plaintiff to plead evidence." *In re Cabletron Sys., Inc.*, 311 F.3d 11, 33 (1st Cir. 2002).

Plaintiffs also assert that both Guba and Ramirez had motive to make misrepresentations because their compensation was tied to Global Power's financial performance.  However, such allegations "are not the types of motive that support a strong inference of scienter." *Abrams*, 292 F.3d at 434.  Incentive compensation "can hardly be the basis for which an allegation of fraud is predicated" because if the Court were to hold otherwise, "the executives of virtually every corporation in the United States would be subject to fraud allegations." *Id.*

Finally, Plaintiffs highlight the magnitude of the corrections in the restatement as well as the SEC initiating a formal investigation of Global Power.  The magnitude of the misstated financials, while surely significant, does not support a strong inference of scienter without allegations showing that Defendants knew or recklessly disregarded the falsity of their misrepresentations, which Plaintiffs have failed to allege here. *See Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 954 (S.D. Tex. 2016); *Magruder*, 2009 WL 854656, at *9.  Similarly, a government investigation is "not altogether irrelevant to the scienter analysis," but the opposing inference, that there is no wrongdoing, is "more compelling in the absence of particular facts giving rise to a strong inference of fraud." *Carlton v. Cannon*, 184 F. Supp. 3d 428, 480 (S.D. Tex. 2016) (quoting *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248–49 (8th Cir. 2008)).

A holistic review of the allegations demonstrates that Plaintiffs have failed to adequately plead facts raising a strong inference of scienter for Guba and Ramirez.  Many of the allegations are open to alternative explanations or are not stated with enough specificity to be credited under the PLSRA.  The remaining allegations suggest that Ramirez and Guba did not knowingly or recklessly publish false financial information.  In fact, the allegations suggest the opposite, that Guba and Ramirez took steps to make sure that financial information was reported accurately.

> ii. **David L. Willis**

Plaintiffs seek to hold Willis liable for misrepresentations related to the sale of Global Power's subsidiary, Deltak, in 2011. (2d. Am. Compl. ¶ 22). After the sale, Willis stated that Deltak was not a separate reporting unit and subsequently treated goodwill in a way that resulted in a pre-tax gain of $14.1 million. (*Id.* ¶ 86). However, Global Power's restatement acknowledged that Deltak should not have been considered a separate reporting unit. As a result of the correction, Global Power actually suffered a pre-tax loss of $4.7 million from the sale. (*Id.* ¶¶ 82, 86). Plaintiffs argue that Willis's treatment of goodwill violated generally accepted accounting principles ("GAAP") and therefore constitutes severe recklessness. (*Id.* ¶ 89).

Failure to follow GAAP, without more, does not establish severe recklessness. *See Shaw Grp.*, 537 F.3d at 534; *Abrams,* 292 F.3d at 433. Plaintiffs must still plead facts leading to a strong inference that Willis was severely reckless. An inference of severe recklessness is more likely "when a statement violates an objective rule than when GAAP permits a range of acceptable outcomes." *Jastrow*, 789 F.3d at 543 (citation omitted).

The accounting treatment for goodwill upon sale of a business depends on whether the sold business was its own reporting unit or portion of a reporting unit:

> [1] When a reporting unit is to be disposed of in its entirety, goodwill of that reporting unit shall be included in the carrying amount of the reporting unit in determining the gain or loss on disposal.
>
> [2] When a portion of a reporting unit that constitutes a business is to be disposed of, goodwill associated with that business shall be included in the carrying amount of the business in determining the gain or loss on disposal.

*See* ACCOUNTING STANDARDS CODIFICATION, Intangibles—Goodwill and Other No. 350, § 20-40-[1-2] (Fin. Accounting Standards Bd. 2017).[9] Determining whether a business is its own

---

[9] The Court may consider these documents in its review because the Second Amended Complaint refers to them and they are in the record. *See Tellabs,* 551 U.S. at 322.

9

reporting unit or not requires an assessment of "facts and circumstances:"

> Whether a component . . . is a reporting unit is a matter of judgment based on an entity's individual facts and circumstances . . . . [N]o single factor or characteristic is determinative.

*Id.* § 20-55-1. The decision not to treat Deltak as a separate reporting unit undeniably involves some subjective judgment. *See Owens*, 789 F.3d at 544. Plaintiffs provide no other allegations to suggest that Global Power's treatment of goodwill was reckless even in light of the subjective nature of the relevant GAAP. Accordingly, Plaintiffs have failed to plead scienter as to Willis.[10]

### b. Loss Causation

Defendants argue that Plaintiffs have failed to plead loss causation for misrepresentations related to the sale of Deltak. To plead loss causation, Plaintiffs must first identify a corrective disclosure that reveals the falsity of the prior misrepresentation. *See Magruder*, 2009 WL 854656, at *11. They must then allege that Global Power's stock price declined after this disclosure. *Id.* To be corrective, the disclosure need not be a direct admission that the prior misrepresentation was false. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 230 (5th Cir. 2009) ("[A] disclosure need not precisely mirror an earlier misrepresentation."). However, the disclosure must at least be "relevant to" the prior misrepresentation, i.e., the disclosure "must make the existence of the actionable fraud more probable than it would be without" the disclosure. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 256 n.20 (5th Cir. 2009).

Plaintiffs identify Global Power's May, 6, 2015, press release as the relevant corrective disclosure. The press release announced that accounting errors affected reported numbers from the fourth quarter of 2014 and that Global Power was investigating "whether other periods may

---

[10] Upon the dismissal of claims against Willis, the earliest actionable statement is Global Power's Form 10-K for 2012, which was signed by Ramirez on March 7, 2013. (*See* 2d. Am. Compl. ¶ 29). Accordingly, Plaintiffs allege no basis for the class period to include September 7, 2011, through March 6, 2013.

have been impacted." (*See* 2d. Am. Compl. ¶ 276; Def. App. at 56, ECF No. 83). This disclosure is not relevant to any prior misrepresentations about the Deltak sale. It only mentions accounting errors affecting the fourth quarter of 2014 and that Global Power will be investigating "whether other periods may have been impacted." Such vague statements about pending internal investigations are insufficient here. *See Amedisys*., 769 F.3d at 323 ("[C]ommencement of government investigations on suspected fraud do not, standing alone, amount to a corrective disclosure."); *Loos v. Immersion Corp.,* 762 F.3d 880 (9th Cir. 2014) (holding that a press release announcing an internal investigation, without more, is insufficient to establish loss causation); *Magruder*, 2009 WL 854656, at *11 (N.D. Tex. Mar. 31, 2009) ("[L]oss causation would not be established if a defendant simply said 'something we told you last year isn't true,' because that is insufficient to show that stock prices were inflated due to a specific misrepresentation and the market reacted when the misrepresentation became known."). Accordingly, Plaintiff has not adequately alleged loss causation, and Section 10(b) claims against Willis and against Global Power for representations related to the sale of Deltak must be dismissed.

**IV.  Section 20(a) Analysis**

Under Section 20(a), "[e]very person who, directly or indirectly, controls any" corporation that is found "liable under any provision of this chapter . . . shall also be liable jointly and severally with" the corporation. 15 U.S.C. § 78t(a). Plaintiffs must therefore establish a primary violation under Section 10(b) before liability arises under Section 20(a) against the officer defendants. *See ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 348 n.57 (5th Cir. 2002). Because Plaintiffs do not state a claim for violation of Section 10(b), their Section 20(a) claims must also be dismissed.

11

### V. Conclusion

For the reasons stated above, Defendants' Motion is **GRANTED**. Plaintiffs fail to state a claim under Section 10(b) because Plaintiffs do not adequately allege scienter against Defendants. Plaintiffs also do not adequately allege loss causation for misrepresentations related to the sale of Deltak. The Court grants Plaintiffs leave to amend to attempt to address the defects identified in this Order by filing an amended complaint on or before January 15, 2018.

**SO ORDERED**.

December 27, 2017.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**